UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**THOMAS YOUNG,**

    **Plaintiff,**

v.                                         Case No. 8:11-cv-21-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                          /

## O R D E R

The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments. The Plaintiff urges that his case be reversed and remanded for further consideration or an award of benefits because the ALJ erred by failing to give greater weight to the opinion of his treating physician. For the reasons set out herein, the decision is reversed and remanded.

A.

Plaintiff was fifty-two years old at the time of his administrative hearing in September 2008. He stands 5 feet 11 inches tall and weighed 224 pounds. Plaintiff has an eleventh grade education and had a contractor's license at one time. His past relevant work was in floor covering, laying carpet, vinyl, and tile. Plaintiff applied for disability benefits and Supplemental Security Income payments in December 2005, alleging disability as of October 1, 2005, by reason of vision loss, degenerative disc disease of the lower back,

degenerative joint disease of the knees, osteoarthritis, and hypertension. The Plaintiff's applications were denied originally and on reconsideration.

A de novo hearing was conducted by an Administrative Law Judge (ALJ) on September 15, 2008. Plaintiff, who was represented at the hearing, testified that he is unable to work because of problems with his vision, his knees, and his lower back. Plaintiff cannot see out of his right eye at all, and his vision in his left eye is poor. He wears a corrective lens and can see distances with the left eye, but has to wear magnifying glasses to see things close up. His eyes are also sensitive to light, especially bright lights at night. Plaintiff testified to having eight retinal surgeries, cataracts removed from both eyes, and one cornea transplant.

As for the problems with his knees, Plaintiff explained that working in flooring for twenty years has taken its toll on his knees. He has had one surgery on the left knee for a meniscus tear, and now he has a meniscus tear on the right. By his account, he experiences pain in his knees all the time that makes it difficult for him to walk or go up and down stairs. His right knee pops when he stands up and he has grinding in both knees. Plaintiff currently sees a pain management doctor once a month for his knee pain. Plaintiff takes OxyContin four times a day for the pain. With medication, his pain level is about a three on a scale from one to ten, with ten being the most painful. Without medication, his pain level is at a nine or ten. He denies any side effects of medication.

Plaintiff estimated he could stand five to ten minutes before needing to sit and he can sit for fifteen to thirty minutes before needing to recline. He can walk only about a city block before needing a break. His doctors have restricted his ability to lift because of the pressure

2

on his eye. The most he can lift is a gallon of milk. Plaintiff testified that, because of his medical problems, he would be unable to stand on his feet six hours out of an eight-hour workday. He estimated that during a nine-hour period from 8:00 a.m. to 5:00 p.m., he would need to sit or recline for about six hours.

As for daily activities, Plaintiff is able to do some chores around the house such as folding clothes or doing the dishes. He lives with his wife, his twenty-five year old son, and his ten-year old son. His wife does the cooking and grocery shopping. His sons and wife take care of the lawn. Plaintiff denies participating in any recreational activities such as golf, swimming, or hunting. He denies smoking or using illicit drugs. He drinks alcohol only occasionally. His son drove him to the hearing. He has not worked since October 1, 2005, the day he lost his vision. (R. 24-35).

The ALJ next took testimony from Gerald Wili, a vocational expert (VE). The VE classified Plaintiff's past work as a floor layer as medium to heavy exertional work. In pertinent part, the VE testified on a hypothetical question which assumed a person of Plaintiff's age, education, and work history capable of lifting and carrying twenty pounds occasionally, ten pounds frequently; standing, walking, or sitting six hours of an eight-hour day, and unlimited in ability to push/pull both in hand and foot controls; occasional postural limitations; and no manipulative, visual, or environmental limitations except a blind right eye with light perception only. On such hypothetical, the VE opined that the individual would be unable to perform Plaintiff's past work but could perform certain light exertional work available in the local and national economy including sales attendant, fast food worker, and

3

counter attendant in a cafeteria. With the added restrictions of mild limitations in activities of daily living, social functioning, and attention, concentration, persistence and pace, this would not change the VE's opinion regarding the availability of these jobs. However, if Plaintiff's testimony at the hearing was credited fully, there would be no available work. The Plaintiff's representative did not inquire of the VE. (R. 35-38).

On December 1, 2008, the ALJ determined that while Plaintiff has severe impairments related to a detached retina in the right eye, arthritis and degenerative disc disease in the lumbar spine with low back pain, degenerative joint disease in the left knee with pain, hypertension and obesity, he nonetheless had the residual functional capacity to perform a wide range of light[1] exertional work that allowed for frequent visual limitations in near acuity, far acuity, and depth perception and did not involve work around unprotected heights and hazardous machinery. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 13-20). The Appeals Council considered additional evidence and denied Plaintiff's request for review.

B.

Consideration of the Plaintiff's claims is governed by certain principles. In order to be entitled to Social Security disability benefits and Supplemental Security Income payments,

---

[1]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. §§ 404.1567(b), 416.967(b).

a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

Plaintiff complains that the ALJ erred by failing to give greater weight to the opinion of his treating physician, Robert Reppy, D.O. Specifically, Plaintiff notes that Dr. Reppy opined that Plaintiff could only stand thirty minutes at a time and for less than two hours in an eight-hour workday and the doctor's opinion was based upon clinical findings and objective signs and was valid as of February 2008. By Plaintiff's reading of the evidence, the medical records and notes from February 2008 forward support this opinion. Rather than affording this treating physician's opinion great weight, Plaintiff urges the ALJ erroneously discounted Dr. Reppy's opinion as being inconsistent with his own treatment notes and medical findings by citing medical notes that predated February 2008. Instead, the ALJ gave controlling weight to the consultative examination performed in 2006– two years prior and therefore irrelevant– and further failed to even mention later progress notes documenting Plaintiff's worsening knee problems. Plaintiff urges the matter be remanded with instructions that the ALJ accept

6

Dr. Reppy's opinion and fashion a hypothetical question to the VE that includes the limitations contained in Dr. Reppy's evaluation. Because Plaintiff is now over fifty-five years of age, the Medical Vocational Guidelines would dictate a finding of disabled and thus the Appeals Council should be directed to find Plaintiff disabled as of his fifty-fifth birthday and the remand should pertain only to the period prior to the Plaintiff's fifty-fifth birthday. (Doc. 21).

The Commissioner responds that the ALJ properly considered Dr. Reppy's opinion, but found it inconsistent with his own treatment notes and medical findings. In addition to the doctor's January 2008 note that Plaintiff was in no acute distress and his pain was a three on a scale from one to ten, the ALJ further referenced Dr. Reppy's February 2008 note that Plaintiff's low back pain was controlled on his current medications (R. 430) and the fact that Plaintiff joined a gym in May 2008 and was feeling stronger (R. 427). Although not referenced in the ALJ's decision, the Commissioner notes subsequent records from Dr. Reppy that support the ALJ's decision including notations that Plaintiff can walk two miles, had normal sensation, was in no acute distress, and had full straight leg raising with slight tenderness. (R. 418, 424). By the Commissioner's argument, Dr. Reppy's records contain no objective testing or clinical findings showing a significant worsening in Plaintiff's condition and the other evidence of record, including the assessments of the state agency consultants, otherwise support the ALJ's conclusions. Moreover, the Commissioner argues that it is the ALJ's ultimate responsibility to assess a claimant's residual functional capacity. (Doc. 22).

Plaintiff is correct that when considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is

shown to the contrary.² *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Here, the decision reflects the following regarding Dr. Reppy's reports:

> The claimant's treating physician, Robert Reppy, D.O., prepared a residual functional capacity assessment dated August 13, 2008 in which he reported that he had treated the claimant since February 2008 for pain in the low back and knees. Dr. Reppy reported that the claimant was unable to climb stairs or walk more than two blocks due to his impairments, and that upon examination the clamant had positive findings for crepitance in both knees. He reported that CT imaging was "positive," and that his pain medications "could cause drowsiness, constipation" (Exhibit 17F, p. 2).
>
> However, Dr. Reppy opined that the claimant was capable of low stress jobs as he was "emotionally stable," and was capable to sitting more than two hours. He also opined that the claimant could frequently flex his neck, turn his head right or left, look up, and hold his head in a static position. He reported no limitations in his ability to grasp, manipulate, or reach overhead with [his] arms and hands.
>
> Dr. Reppy's treatment records however, indicate that in January 2008, the claimant was "in no acute distress" and that the claimant reported a pain level of "3" on the one to ten pain scale, with 10 being the worst amount of pain

---

²Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440.

8

> (Exhibit 17F, p. 16). Additionally, on January 29, 2008, the claimant reported that his pain was "well controlled" since his last visit and denied medication side effects (Exhibit 17F, p. 15). Similarly, on February 28, 2008, the claimant was found to have "low back pain controlled on his current meds" (Exhibit 17F, p. 13). On May 22, 2008, the claimant reported joining a gym and "feeling stronger" (Exhibit 17F, p. 9).

(R. 18). In addressing the opinion evidence, in particular, that of Dr. Reppy,[3] the ALJ declined to afford it controlling weight because he found the opinions inconsistent with the doctor's treatment notes and medical findings. (R. 19). Plaintiff urges the ALJ misconstrued the report and erred by discounting it because the post-February 2008 reports from this doctor support his RFC assessment. In particular, it appears that Plaintiff's main complaint is with the ALJ's failure to credit Dr. Reppy's limitation for standing only thirty minutes at a time and for less than two hours in an eight-hour day. After full consideration of the whole of the medical record, I find a remand is necessary for further consideration of Dr. Reppy's opinion testimony.

While I reach no conclusion on the issue of Plaintiff's disability, given the circumstances of this case I conclude that the ALJ has failed to articulate adequate good cause

---

[3] By this RFC assessment, Plaintiff lacks the capacity to walk and stand necessary for a full eight-hour day of light exertional work. Findings in support of it included bulging discs at L2-3 and L4-5, osteoarthritis in both knees with resultant low back and bilateral knee pain, and crepitus in both knees. Additional limitations in the assessment included lifting twenty pounds occasionally and ten pounds frequently, the ability to sit for more than two hours at a time, the option to sit or stand at will, standing/walking for less than two hours in an eight-hour day, certain postural limitations, and unscheduled breaks four to five times a day for five to ten minutes. The doctor indicated that Plaintiff's limitations have persisted since February 2008 and have lasted or could be expected to last at least twelve months. (R. 419-23).

for discounting Dr. Reppy's opinion testimony.[4] In this case, the ALJ's statement that the doctor's opinions were not given controlling weight because they were inconsistent with treatment notes and medical findings, absent more, is simply inadequate. Dr. Reppy was the sole treating doctor cited by the ALJ and, absent good cause, his opinions were entitled to substantial weight. By Dr. Reppy's assessment, based on objective evidence and his clinical findings related to Plaintiff's back and knees, Plaintiff could not stand for more than thirty minutes at a time and could stand for less than two hours in an eight-hour day. Apart from the assessments by two state agency consultants to the contrary, there was no other opinion evidence in the record to contradict this conclusion.[5] In this circuit, the opinions of nonexamining, reviewing doctors, when contrary to those of examining doctors, are entitled to little weight and standing alone do not constitute substantial evidence. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th

---

[4]To the extent Plaintiff argues that the ALJ erred in considering evidence from 2006 in arriving at his conclusions, I disagree. Here, the Plaintiff alleged an onset date in October 2005. Thus, it is hardly improper that the ALJ gave full consideration to the evidence from that date through the date of decision. I do agree, however, that the 2006 evidence likely does not provide adequate cause to discount Dr. Reppy's opinions in 2008. Regarding Plaintiff's allegation that the ALJ "misconstrued" Dr. Reppy's assessment, there is no evidence to suggest that the ALJ did so although it does appear that he selectively accepted portions of the report. As stated above, to a large extent, the ALJ appears to have relied on Dr. Reppy's clinical observations, apart from those related to Plaintiff's ability to stand and walk.

[5]The record reflects a thorough consultative examination by Stanley Rabinowitz, M.D. (R. 279-85). While the examination reflects relatively mild findings, the doctor did not render an opinion on Plaintiff's functional capacity.

Cir.1987)). Thus, the reliance on the contrary evidence from the nonexamining doctors was improper.[6]

Further, by my reading of the decision, the ALJ's treatment of Dr. Reppy's records is itself inconsistent. Thus, it appears that the ALJ fully credited the opinions and clinical findings by Dr. Reppy to the extent that such suggested the functional capacity for work. Impliedly, he rejected only those limitations, including those for standing/walking, which indicated Plaintiff could not do a full day of light work. Ostensibly, this was because those opinions were inconsistent with medical findings and treatment notes. I have reviewed the treatment notes from Dr. Reppy and fail to discern the inconsistencies or note the medical findings inconsistent with the limitations on standing/walking. Here, I agree with Plaintiff that the notations from Dr. Reppy's records cited by the ALJ and indicating that his pain was under control do not necessarily even speak to his capacity to stand and walk. Thus, I am left to conclude that the purported inconsistencies are not adequately revealed by the ALJ to support a conclusion for good cause to discount Dr. Reppy's opinion testimony. A remand for further consideration is required.

---

[6]The decision reflects that the ALJ gave substantial weight to the opinions of the "state agency experts" as being fully consistent with the evidence including findings by the consultative examiners. (R. 19). Presumably the ALJ was referencing and adopting the assessment by Albert Ponterio, M.D., that Plaintiff could perform light exertional work including walking and/or standing 6 hours in an 8-hour day. *See* (R. 287-94). The other assessment was made by a non-doctor, single decision maker who found no exertional limitations at all, a matter not noted or addressed by the ALJ. *See* (R. 271-78).

11

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards. The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order. Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 19th day of March 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record